UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

ZAYO GROUP, LLC.,

    Plaintiff,                                         4:14-CV-12323-TGB-PJK

v.                                                  Hon. Terence Berg

SPEED CONNECT, LLC,

    Defendant.

| Christopher M. Schierloh | Michael J. Sheehan (P58585) |
|---|---|
| CASEY & BARNETT, LLC | Alex G. Cavanaugh (P76581) |
| 65 West 36th Street | HOWARD & HOWARD ATTORNEYS PLLC |
| 9th Floor | 450 West Fourth Street |
| New York, NY 10018 | Royal Oak, MI 48067 |
| (212) 286−0225 | (248) 723-0361 |
| cms@caseybarnett.com | msheehan@howardandhoward.com |
| *Attorneys for Plaintiff's* | acavanaugh@howardandhoward.com |
| *Filing in New York* | *Attorneys for Defendant* |

**ANSWER TO COMPLAINT,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

       Defendant SpeedConnect, LLC ("SpeedConnect"), by and through its attorneys, Howard & Howard Attorneys PLLC, answers plaintiff Zayo Group's Complaint as follows:

**JURISDICTION**

       1.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. 1332 (a)(1), in that this case presents a controversy between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds Seventy-Five Thousand Dollars ($75,000).

**ANSWER:**

       Defendant admits that the amount in controversy exceeds $75,000.  Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of this paragraph.

## PARTIES

2.       Plaintiff, Zayo Group, is a foreign limited liability company authorized to do business in the State of New York, with a place of business located at 111 8th Avenue, New York, New York, and was the provider of leased fiber and. internet bandwidth services to the defendant, as more fully described below.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

3.       Defendant Speed Connect, LLC is a Limited Liability Company with its principal place of business located at 455 North Main Street, Frankenmuth, Michigan.

**ANSWER:**

Admitted.

## FACTS

4.       Zayo is, and was, a facilities-based provider of technologically advanced, high bandwidth, fiber optic communications infrastructure, and related services, to communications carriers. Zayo also provides high bandwidth Internet connectivity, co-location services, and a comprehensive Internet infrastructure management solution that includes design and architecture, hardware and software, installation, and ongoing management.

**ANSWER:**

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

5.       Upon information and belief, the defendant is, and was engaged in the business of providing high speed broadband internet and phone services to its customers.

**ANSWER:**

Admitted.

6. On or about April 29, 2012 and October 29, 2012, defendant, Speed Connect, executed Zayo Service Order Forms numbered 297381, 297378, 287048 and 325583 for the provision of ethernet and point to point internet and communication services to Speed Connect for a term of 60 months. (Hereinafter "the Service Orders").

**ANSWER:**

Defendant admits it signed some service order forms, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

7. The aforementioned Service Orders incorporated the terms of the Master Service Agreement (MSA) which sets forth the terms, conditions, and framework under which Plaintiff would provide the requested services and necessary equipment,

**ANSWER:**

Defendant admits it signed some service order forms, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

8. Plaintiff provided the services and equipment as set forth in the Service Orders and MSA.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

9. On or about October 29, 2013, prior to the expiration dates of the Service Orders, and without just cause. Defendant, Speed Connect, advised Plaintiff that it was terminating its use of Plaintiffs services.

**ANSWER:**

Defendant admits it terminated its use of Plaintiff's services, but Defendant denies the remaining allegations of this paragraph for the reason that they are untrue.

3

10. Pursuant to the terms and conditions of the aforementioned Service Orders and MSA, the Defendant is responsible to Plaintiff for the payment of services rendered, and for the payment of early termination charges for cancelling its contractual obligations prior to the end of the service terms.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF CONTRACT

11. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 10, as if herein set forth at length.

**ANSWER:**

Defendant incorporates its prior responsive paragraphs herein.

12. The MSA and Service Orders constituted binding contracts supported by good and valuable consideration.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

13. Plaintiff rendered material performance of its duties and obligations under the MSA and Service Orders; satisfied or discharged all conditions precedent (if any) to defendant's performance under the MSA and Service Orders; and, therefore, was and is entitled to defendant's foil and complete performance under the MSA and Service Orders.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

14. By virtue of the Defendant's material breach/termination of the MSA and Service Orders, defendant is liable to Plaintiff in the amount, of at least $965,491.69 plus pre-judgment and post-judgment interest, no part of which has been paid, although duly demanded.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR ACCOUNT STATED

15. Plaintiff repeats and reiterates each and every allegation set forth in paragraphs 1 through 14, as if herein set forth at length.

**ANSWER:**

Defendant incorporates its prior responsive paragraphs herein.

16. Plaintiff rendered invoices, account statements, and/or notices to defendant reflecting the charges due and owing from Defendant to Plaintiff.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

17. The invoices, account statements, and/or notices which Plaintiff delivered to defendant established an account stated.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

18. Accordingly, there is due and owing from defendant to Plaintiff the sum of at least $965,491.69, plus pre-judgment and post-judgment interest, no part of which has been paid despite due demand.

**ANSWER:**

Defendant denies the allegations of this paragraph for the reason that they are untrue.

**WHEREFORE,** Defendant respectfully requests that this Honorable Court deny any claimed relief to Plaintiff and award Defendant its costs and attorney fees incurred in defending this action.

## SPECIAL AND/OR AFFIRMATIVE DEFENSES

Defendant SpeedConnect, by and through its attorneys, Howard & Howard Attorneys PLLC, submits the following Affirmative Defenses:

1. Plaintiff never signed the draft contracts that Plaintiff alleges to be binding contracts in this case such that they were never enforceable contracts.

2. Plaintiff was the first party to materially breach any contracts that existed between the parties.

3. The goods and/or services provided by Plaintiff to Defendant were defective, substandard, defective, and/or below the standard of quality promised and/or warranted by Plaintiff.

4. Any contracts between the parties were procured by fraud.

5. Plaintiff fraudulently induced Defendant to enter into any contracts between the parties by means of fraudulent misrepresentations.

6. Plaintiff's Complaint is barred by the applicable statute of frauds.

7. Plaintiff's claim for damages is barred by the equitable doctrine of setoff.

8. Plaintiff's claim may be barred by reason of its failure to mitigate damages.

## COUNTERCLAIM

Defendant/Counter-Defendant SpeedConnect submits the following as its Counterclaim against Plaintiff/Counter-Defendant Zayo Group, LLC ("Zayo"):

1. SpeedConnect offers broadband internet access for internet and telephone services to customers in various markets in Montana (as well as other states) pursuant to licenses granted by the Federal Communications Commission.

2. In communications with SpeedConnect, Zayo represented itself as offering a fiber optic communications network that could provide network services to support high-bandwidth applications that could be utilized by SpeedConnect in serving its customers.

3. Zayo was aware of the technical requirements, capacity, and level of service that SpeedConnect would need from a network provider, and fraudulently misrepresented to SpeedConnect that it could provide those requirements.

4. As a result of these and other misrepresentations, SpeedConnect entered into discussions with Zayo regarding a draft Master Services Agreement in approximately 2012 (the "Master Services Agreement").

5. By the terms of the Master Services Agreement, Zayo was to provide certain telecommunications network services as described in ancillary "service orders."

6. SpeedConnect requested that Zayo provide certain services and/or equipment and therefore signed the Master Services Agreement and tendered such signature to Zayo.

7. However, to the best of Defendant's knowledge, Zayo never countersigned the Master Services Agreement or any ancillary service orders, and never tendered any countersignatures to Defendant.

8. Pursuant to the terms of the unsigned, draft Master Services Agreement, any service orders were subject to the procedures set forth in the Masters Services Agreement, and would only be effective "provided that an authorized representative of Zayo has executed such Service Order."

9. Zayo chose not to countersign any of the Service Orders signed by SpeedConnect, and never tendered any such countersignatures to SpeedConnect.

10. Despite the fact that the parties never finalized any written contract governing their relationship, SpeedConnect requested that Zayo provide certain services and/or equipment, and Zayo provided certain services and/or equipment.

11. However, problems began to develop with the network services provided by Zayo. SpeedConnect—and by extension SpeedConnect's customers—was subjected to several numerous and lengthy service outages, slow downs, compaction, and substandard transmissions as a result of Zayo's shortcomings.

12. The recurring outages, slow downs, and substandard transmissions materially impaired the value of the services provided by Zayo, and materially impaired and damaged SpeedConnect's business relationship with its customers and caused SpeedConnect to lose customers. Zayo failed to cure or remedy the problems despite notice and complaint from SpeedConnect.

13. As a result of Zayo's substandard performance, SpeedConnect chose to revoke any offers associated with the draft, unsigned service orders and other writings, and terminated its business relationship with Zayo in 2013.

## COUNT I – BREACH OF CONTRACT/IMPLIED CONTRACT

14. Defendant/Counter-Plaintiff incorporates all prior paragraphs herein.

15. Defendant/Counter-Plaintiff pleads this Count in the alternative.

16. Although the parties never entered into any written contract for any term, SpeedConnect requested that Zayo provide certain services and/or equipment, and Zayo agreed to provide such services/equipment.

17. Zayo expressly and/or impliedly promised and/or warranted that the services and/or equipment would be of sufficient quality, design, capacity, and technical specifications to permit SpeedConnect to provide appropriate service for its customers.

18. Zayo was the first party to materially breach its obligations by providing defective services in a defective and negligent manner.

19. As a result of Zayo's inadequate services, SpeedConnect (and its customers) suffered recurring outages, slow downs, packet losses, extremely slow video buffering, extremely slow internet connection speeds, dropped telephone calls, disrupted internet usage, and overall highly substandard internet transmissions.

20. Zayo failed to cure or address these deficiencies after notice from SpeedConnect.

21. These defects have been so pervasive as to defeat the fundamental purpose of the business relationship between the parties.

22. These defects materially affected and interfered with SpeedConnect's ability to properly serve its customers, and have cause significant and lasting damage to SpeedConnect's customer relationships.

23. Zayo's defects in performance have caused SpeedConnect to lose customers, lose significant revenue, and to suffer significant damages.

WHEREFORE, Defendant/Counter-Plaintiff SpeedConnect respectfully requests that the Court issue Judgment in this action in favor of SpeedConnect and against Zayo in an amount sufficient to compensate SpeedConnect for its damages, together with attorney fees, costs, interest, and such other relief as this Court deems just and equitable.

## COUNT II – FRAUD/FRAUD IN THE INDUCEMENT

24. Defendant/Counter-Plaintiff incorporates all prior paragraphs herein.

25. Defendant/Counter-Plaintiff pleads this Count in the alternative.

26. Prior to SpeedConnect's execution of the Master Services Agreement and service orders thereunder, Zayo made misrepresentations to SpeedConnect regarding Zayo's capabilities to competently provide the services SpeedConnect required.

27. Zayo knew that its misrepresentations were false when made.

28. Zayo made its misrepresentations about its capabilities and the services it could competently provide with the intention that SpeedConnect would rely upon them.

29. SpeedConnect did in fact rely upon Zayo's material misrepresentations including, inter alia, by signing the Master Services Agreement and service orders thereunder.

30. To the extent this Court or a finder of fact finds that the Master Services Agreement or service orders thereunder to be otherwise valid or binding, they should be held to be void or voidable under law since they were fraudulently-induced.

31. In addition, Zayo's material misrepresentations caused SpeedConnect to enter a business relationship with Zayo.

32. SpeedConnect has been damaged as a result.  SpeedConnect received substandard and deficient services and support from Zayo, disrupting SpeedConnect's ability to provide service to its customers and causing damage to SpeedConnect's customer relationships, revenue, and reputation.

WHEREFORE, Defendant/Counter-Plaintiff SpeedConnect respectfully requests that the Court issue Judgment in this action (i) declaring the Master Services Agreement together with its Exhibits void ab initio or voidable due to fraud, and (ii) awarding money damages in favor of

SpeedConnect and against Zayo in an amount sufficient to compensate SpeedConnect for its damages, together with attorney fees, costs, interest, and such other relief as this Court deems just and equitable.

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ *Michael J. Sheehan*
      Michael J. Sheehan (P58585)
Attorneys for Plaintiff
450 West Fourth Street
Royal Oak, MI 48067-2557
(248) 645-1483
mjs@h2law.com

Dated: July 15, 2014

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties in the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on July 15, 2014.

| By: | ☐ U.S. Mail | ☐ FAX |
|---|---|---|
| | ☐ Hand Delivered | ☐ E-mail |
| | ☐ Overnight | ☒ ECF |

I declare that the statements above are true to the best of my information, knowledge, and belief.

By: /s/ *Michael J. Sheehan*
      Michael J. Sheehan